■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL DAVIS, Appellant. [677 NYS2d 541] —Judgment, Supreme Court, New York County (Alvin Schlesinger, J.), rendered April 10, 1995, convicting defendant, after a jury trial, of assault in the first degree, and sentencing him as a second violent felony offender to a term of 7 to 14 years, unanimously reversed, on the law, and the matter remanded for a new trial.

Of the six black prospective jurors in the jury pool for this trial, one was excused for cause by the People, one was excused for cause by defendant and four were peremptorily challenged by the People. After 12 jurors were sworn, but before the alternate jurors were chosen, defense counsel moved for a mistrial pursuant to *Batson v Kentucky* (476 US 79). Counsel argued that the prosecutor had used his peremptory challenges so as to exclude black jurors because, apart from the excusal for cause each side had made, the prosecutor had peremptorily challenged every prospective black juror. The prosecutor responded that counsel's challenge should have been raised at the time the peremptory challenges had been exercised, and that, in any event, he did not recall the race of the jurors questioned.

Counsel was able to provide the names of three of the jurors so challenged, and the prosecutor attempted to provide an explanation for his peremptory challenge as to each. As to one, he recalled that she was challenged because a daughter was involved in a criminal matter, and she also had exhibited a total lack of interest in the proceedings. With respect to one of the male jurors, the prosecutor stated that this particular individual had been hostile toward him, answering his questions abruptly and looking at him with animosity. As to the second male, Arthur Hoilcend, who worked for the City, the prosecutor's notes were sketchy and he could not remember why he had challenged him.

Following this colloquy, the court found that the explanations proffered by the prosecution were race-neutral and denied the application for a mistrial. Upon review of the record, we

agree with defendant's claim that the prosecutor failed to provide a race-neutral reason for the peremptory challenge of Hoilcend and accordingly reverse and remand for a new trial.

The People contend that the claim is unpreserved because counsel did not raise a specific objection with respect to the prosecution's response concerning Hoilcend once the court stated that race-neutral reasons had been provided and asked if counsel wished to add anything. They argue that, had counsel made a timely objection at this juncture, the prosecutor could have "search[ed] his memory" for his reasons as to Hoilcend. We find that an adequate and timely objection was made and the claim is preserved. A *Batson* motion has been held to be timely when made after a jury is selected but prior to trial (*see, People v Scott*, 70 NY2d 420, 425). Moreover, the People's argument in this respect is inconsistent with the process by which a *Batson* analysis is made, as explained below; it is defendant's objections that give rise to the prosecutor's obligation to state race-neutral reasons for the disputed challenges in the first place.

In order to determine whether a juror has been peremptorily challenged on the basis of race, *Batson* (*supra*) sets forth a three-step test. As noted, the first step requires the party contesting the challenge to make a prima facie showing that the peremptory challenges are related to the race of the jurors at issue. Once this showing has been made, the burden then shifts to the other party to provide race-neutral explanations for each juror so challenged (*People v Hernandez*, 75 NY2d 350, *affd* 500 US 352). This is not a heavy burden and may be satisfied by a facially neutral explanation (*People v Allen*, 86 NY2d 101, 109). If the explanations appear to be race-neutral, then step three requires the court to determine whether the party contesting the challenge has proved racial discrimination (*People v Payne*, 88 NY2d 172). The manner in which the court conducts the inquiry and follows the three steps is within its discretion; there is no prescribed procedure that must be followed so long as the substantive principles are satisfied and an adequate record is made (*People v Hameed*, 88 NY2d 232, *cert denied* 519 US 1065).

Here, where the court ruled on the ultimate question of discrimination (step three), the preliminary question of whether defendant had made the requisite prima facie showing of discrimination became moot. Because the People did not challenge his application on that basis at the time, they may not do so now (*People v Payne, supra*, at 182, n 1). As to step two, when the prosecutor attempted to provide a race-neutral

basis for his peremptory challenges of the three named jurors, he was asked first about Hoilcend and stated that he could not tell from his notes why he had challenged him; at this response, the court moved on to the next juror in issue. While it may well be true that, if given the opportunity to "search his memory," the prosecutor might have given an acceptable explanation, the fact is that where the prosecution "offers no explanation, the defendant has succeeded in meeting the ultimate burden of establishing an equal protection violation" (*People v Allen*, supra, at 109). While it is in no way dispositive, we note that the voir dire of this particular juror does not suggest what might have prompted the challenge.

In almost the identical situation, the Third Department reversed the defendant's conviction, where the People provided race-neutral reasons for two challenged jurors but failed to provide one for a third, whereupon defense counsel advised the court that he had nothing further to add and the trial court concluded that the People had provided non-pretextual explanations and denied the *Batson* challenge (*People v Starks*, 234 AD2d 861). The Third Department found that while the court had observed the "three-step protocol" as to two jurors, with respect to the third juror "its determination is procedurally flawed as it did not complete step two, without which its step three finding is meaningless" (*supra*, at 862).

In light of our reversal on this ground and remand for a new trial, we do not address defendant's remaining claim. Concur—Milonas, J. P., Nardelli, Wallach and Saxe, JJ.