(April 12, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERICK JAMES, Also Known as ISAAC DELAY, Appellant. [724 NYS2d 31] —Judgment, Supreme Court, New York County (Joan Sudolnik, J.), rendered January 5, 1998, convicting defendant, after a jury trial, of attempted criminal possession of a weapon in the second degree and sentencing him, as a second violent felony offender, to a determinate term of 6 years imprisonment, affirmed.

There is no merit to defendant's claim, on appeal, that, in response to defense counsel's *Batson* objection during voir dire, the prosecutor failed to give any reason for excusing two of the five women and gave clearly pretextual reasons for challenging two others.

Unlike *People v Davis* (253 AD2d 634), where a *Batson* objection was raised regarding the prosecution's peremptory challenges to all six black prospective jurors, defense counsel's *Batson* objection here was clearly addressed to the prosecution's peremptory challenge to only one prospective juror, Ms. Bemejam, a social worker and substance abuse counselor.

While prefacing her objection by referring to four other black women previously excused by the prosecution, counsel's *Batson* objection was specifically limited to one person, Ms. Bemejam, who had just been peremptorily challenged: "I am asking him to give a reason why he is kicking *her* [Ms. Bemejam] off. *She* said *she* could be fair. *She* has no problems. *She* doesn't have any family in law enforcement. *She* didn't say much at all" (emphasis added). Aside from the singular language utilized by defense counsel, the context makes it clear that defense counsel's objection involved only one person. Defense counsel's references to the others who were previously challenged were not part of her specific objection to the prosecutor's challenge to Ms. Bemejam, but were clearly mentioned solely to show the prosecutor's allegedly race-based pattern of challenges throughout the process. There was no request for "reasons" regarding the others.

In response to the request that he give reasons for excusing Ms. Bemejam, the prosecutor also put his challenge in context

by explaining that, in exercising his peremptory challenges, he was focusing on occupations and was trying to keep social workers and nurses off the jury. The court found no reason to conclude that his peremptory challenges were not genuine and stated that "the challenge is denied" (emphasis added). Defense counsel never raised any objection to or questioned the prosecutor's stated reasons or the court's ruling. Thus, any claim that the defense's *Batson* objection was addressed to the other four black women mentioned during counsel's argument has not been preserved for review by this Court.

We also find no merit to defendant's claim, again not advanced below, that the reason given by the prosecutor for excusing Ms. Bemejam was pretextual, inasmuch as there was a potential psychiatric defense and the major areas of inquiry during voir dire were the prospective jurors' familiarity with medical records and their knowledge of, opinions about and working relationships with psychiatrists or psychologists. Concur—Sullivan, P. J., Andrias and Rubin, JJ.

Tom and Ellerin, JJ., dissent in a Memorandum by Tom, J., as follows: I believe that we are obliged to reverse under constraint of *People v Davis* (253 AD2d 634) on the *Batson* claim. Accordingly, I respectfully dissent. After the prosecutor had exercised peremptory challenges to several black females, defense counsel raised a *Batson* claim on that basis. Defense counsel stated: "Judge, at this time I am making a Batson challenge on behalf of my client. This is now—Mr. Jaffee kicked off Miss Nicholas who is a Black female. Miss Freeman [*sic*] on the last round was a Black female. Alice Newton is a Black female. Jacqueline Accoo is a Black female and now Miss Bemejan, and I am asking him to give a reason why he is kicking her off. She said she could be fair. She has no problems. She doesn't have any family in law enforcement. She didn't say much at all." Defense counsel then stated that "Mr. Jafee had a peremptory challenge for *every* Black Woman except for one." (Emphasis added.)

Contrary to the majority's position, the record clearly supports defendant's contention that the prosecutor had exhibited a pattern of racially motivated challenges and that a *Batson* challenge was made to the five aforementioned black female prospective jurors and not merely to Ms. Bemejan. In fact, the prosecutor and the trial court also interpreted defendant's *Batson* challenge as pertaining to all five black women whom the prosecutor had peremptorily challenged. In response to defendant's challenge, the prosecutor offered to "go right to the reasons," began explaining why he challenged Accoo, and then

discussed Nicholas. The prosecutor never even mentioned Bemejan by name, although she did fit within the classification of social workers who worked with psychiatrists, which was an objectionable type of juror in the prosecutor's judgment. When the court denied defendant's *Batson* challenge, it ruled: "Based on the record there is no reason to conclude that your *challenges*, were not genuine. So, the challenge is denied." (Emphasis added.)

The prosecutor offered to state race-neutral explanations for each such challenge, and did so for most, explaining, in the context of the anticipated psychiatric defense, that he did not want medical professionals or social workers, and that another peremptory was exercised for the additional reason that the potential juror believed an acquaintance had been "railroaded" by law enforcement. However, the prosecutor neglected to provide explanations for two of the specified potential jurors. Even if one of those jurors, Ms. Friedman, might arguably have fit within the employment categories disfavored by the prosecutor, the remaining one, Ms. Newton, a university secretary, did not fit within the categories of medical professional or social worker. Under the rule enunciated in *Davis*, this oversight manifests the prosecutor's failure to provide a race-neutral explanation in the face of a specific *Batson* challenge. Nor does counsel's failure to except alter this result (*see, People v Starks*, 234 AD2d 861), an omission that, in any event, does not exonerate the trial court's failure to ensure complete compliance with *Batson* (*People v Payne*, 88 NY2d 172; *see, People v Allen*, 86 NY2d 101).