[728 NYS2d 417]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AN-
THONY JONES, Also Known as RAY ANTHONY BROWN, Ap-
pellant.

First Department, May 17, 2001

### APPEARANCES OF COUNSEL

*Sylvia Wertheimer* of counsel (*Deborah L. Morse* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Amy Donner* of counsel (*M. Sue Wycoff,* attorney), for appellant.

### OPINION OF THE COURT

BUCKLEY, J.

Although this argument in this appeal largely focused on whether or not defendant proved a *Batson* claim regarding jury selection procedures, this case also demonstrates the critical importance of making unambiguous objections so that they·can be clearly resolved in the first instance by the trial court and are preserved for appellate review. Since the record before us demonstrates that defendant failed to articulate the argument he now belatedly advances we affirm defendant's conviction.

*Batson v Kentucky* (476 US 79, 89) held that a prosecutor's use of peremptory challenges cannot be based "solely on account of [potential jurors'] race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."

██ Analysis of a *Batson* objection should be done through the exploration of three broad questions, namely: (1) has a prima facie showing been made that challenges have been exercised based on race; if so, (2) has a race-neutral explanation been tendered; and, (3) has defendant nonetheless proven purposeful discrimination (*People v Childress*, 81 NY2d 263, 266). The party asserting the *Batson* objection bears the burden of proof to show discriminatory use of peremptory challenges (*People v Allen*, 86 NY2d 101, 109-110). This is not done by mere reliance on the exclusion of a certain number of individuals belonging to a particular racial or ethnic group but depends on proof of facts and circumstances which establish intentional discrimination (*People v Jenkins*, 84 NY2d 1001, 1002-1003). Proof sufficient to make a prima facie showing shifts the burden

of going forward to the other party yet the ultimate burden of persuasion remains on the one alleging discrimination in juror selection (*People v Hernandez*, 75 NY2d 350, 355, *affd* 500 US 352; *People v Parra*, 265 AD2d 172, *lv denied* 94 NY2d 827).

In this case, the trial court's failure to clearly follow the foregoing three-step procedure requires us to determine the answer to each of these questions. A searching review and analysis of the record demonstrates that the defendant had not met his burden to demonstrate a *Batson* claim as to the challenged juror, Caviness, and that defendant did not articulate the individual objection to another juror, F. T., that he has made the basis of his appeal.

As with other trial rulings, appellate review of *Batson* objections sensibly requires preservation as mandated by CPL 470.05 (2) (*see, e.g., People v De Los Angeles*, 270 AD2d 196, 198, *lv denied* 95 NY2d 889). An objector is not allowed to either interpose a vague *Batson* objection or forego making a particularized objection to a juror only to later pursue a reformulated, belatedly specific claim on appeal (*People v Reyes*, 274 AD2d 323, *lv denied* 95 NY2d 870; *People v Williams*, 271 AD2d 363; *People v Velasquez*, 267 AD2d 64, *lv denied* 94 NY2d 886; *People v Riley*, 254 AD2d 78, *lv denied* 93 NY2d 857; *People v Lynn*, 224 AD2d 294, 295, *lv denied* 88 NY2d 881). A failure to controvert the explanations for the use of peremptory challenges constitutes a failure to preserve a *Batson* claim (*People v Thomas*, 275 AD2d 234, *lv denied* 95 NY2d 893; *People v Williams*, 271 AD2d 363; *People v Hedian*, 258 AD2d 363, *lv denied* 94 NY2d 824). Defendant here raised a *Batson* claim, and, when the objection was shown to be meritless, failed to controvert the neutral explanations offered for the use of the peremptory challenges. Defendant also did not advance the *Batson* claim argued in this appeal.

As a result of preliminary screening, 24 potential jurors were excused because either they had religious or philosophical beliefs making it difficult to reach a verdict or they had a limited ability to communicate in English or they had scheduling concerns or they had been crime victims impairing their ability to be impartial. Subsequent questioning of prospective jurors was done in successive groups of 12 as the court inquired at length and each counsel was allowed 10 minutes. At the conclusion of three rounds of such questioning, five prospective jurors had been struck for cause, one struck on consent, seven struck by the prosecution and 12 struck by the defendant. When the fourth round of questioning was completed and after

the prosecution exercised two peremptory challenges, defendant raised his *Batson* claim "at this point" asserting that:

> "on the first panel, your Honor, [the prosecutor] excluded juror number ten, F. T., a black woman; W. N., a black man was excused. Then in the second panel, a black man, P. N., the People exercised a peremptory. Now another black man, Caviness, people exercise peremptory. At this point I think it's the prosecutor's burden to show that this isn't race based."

This *Batson* claim was directed at the use of a peremptory against Caviness or, more broadly, at a pattern of excluding black jurors culminating in Caviness.

Responding to this specific claim of racial prejudice, the prosecutor explained that Caviness had been difficult to engage and had volunteered his belief that detectives pressure suspects to give confessions. The prosecutor highlighted that he challenged one black juror for cause and another for having had problems with police officers. He also ruled that he chose a black woman who worked for the Department of Investigations.

Instead of ruling on whether defendant had formulated a prima facie *Batson* objection (step 1), presumably since the prosecutor had already offered his response, the trial court found that the prosecution's use of peremptories had been based on non-racial grounds (step 2). Defendant did not make any offer of proof to show that the prosecutor's use of peremptory challenges was based on intentional discrimination (step 3). Defendant did not controvert the prosecutor's explanation about Caviness, did not disagree with the description of the for-cause exclusion and did not dispute the exclusion of a black woman, F. T., in the first round of questioning as implicitly based on her different vocational background from another black woman in the same round who was accepted as a juror. Defendant failed to make out his claim based on Caviness and the pattern of which he was the supposed culmination. It is clear that defendant did not articulate a separate *Batson* claim arising from the peremptory used in the first pool against a black woman, although that is the only theory now pursued.

On appeal, and for the first time, defendant states that his *Batson* claim is based on F. T., the black woman in the first pool. It is, however, clear from the record that no claim as to her was made when she was peremptorily challenged nor dur-

ing the remainder of questioning in the first pool. Not until questioning the fourth pool of prospective jurors and defendant's objection to the prosecutor's use of a peremptory against Caviness was F. T. mentioned and then only as part of a pattern which, upon closer examination, did not exist. At no time did defendant state that F. T.'s removal from the panel was itself discriminatory. An unarticulated claim is an unpreserved claim.

Work experience, or the lack thereof, is a race-neutral and non-pretextual reason for the exercise of a peremptory challenge (*People v Cuevas*, 277 AD2d 56). An implicit rejection of the claim that use of a peremptory challenge was pretextual is entitled to great deference (*People v Reyes*, 274 AD2d 323, *lv denied* 95 NY2d 870). Although defendant was free to request a further opportunity to make a different claim based on the exclusion of F. T., his failure to do so cannot be remedied at the appellate level (*see, People v Williams*, 271 AD2d 363). There is absolutely no proof in this record that the prosecutor used race as a criterion for the exercise of peremptory challenges. Defendant did not substantiate his charge of discrimination based upon a black male juror in the fourth pool and on the serial use of peremptories. Defendant did not articulate a *Batson* claim based on the isolated peremptory challenge to F. T. (*see, People v Manigo*, 165 AD2d 660).

Unlike *People v Davis* (253 AD2d 634), peremptory challenges were not used in this case to disqualify every black juror. Moreover, in *Davis* the prosecutor was specifically called upon to provide a race-neutral explanation for his challenge to the particular juror in question, but was unable to do so. Nor is this a case where "facts and other circumstances" support an inference of impermissible discrimination such as where disproportionate strikes against members of a particular racial or ethnic group were used or where "token" members were accepted (*People v Childress*, 81 NY2d 263, 266-267). As the trial court correctly understood, defendant's *Batson* claim with respect to Caviness was baseless. To the extent that defendant made a broader claim regarding two previous peremptory challenges by the prosecution, he simply failed to make out "[t]he more difficult aspect of the prima facie case delineated in *Batson* * * * the second element—a showing of 'facts and other relevant circumstances' that would support an inference of impermissible discrimination." (*People v Childress*, 81 NY2d at 266.)

While the judiciary of this State has been aptly vigilant to "condemn, expose and root out" racist practices in the use of

peremptory challenges of prospective jurors (*People v Payne*, 88 NY2d 172, 181) through the device of *Batson* objections, the jury selection in this case was untainted by discrimination. While we have been able to reach this conclusion, we reiterate that it is nonetheless of critical importance that when a trial court is asked to evaluate a *Batson* challenge, the three-step procedure previously articulated by precedent and restated above is a *sine qua non* for initial determination and appellate review. All specific grounds upon which a *Batson* challenge are made must be articulated at that time.

For the foregoing reasons, the judgment of the Supreme Court, New York County (Dorothy Cropper, J.), rendered October 1, 1997, convicting defendant of robbery in the first and second degrees and attempted robbery in the third degree and sentencing him, as a second felony offender, to concurrent terms of 13 years on the first and second degree robbery convictions and a consecutive term of 2 to 4 years on the attempted robbery conviction, should be affirmed.

ROSENBERGER, J. P., WILLIAMS, LERNER and SAXE, JJ., concur.

Judgment, Supreme Court, New York County, rendered October 1, 1997, affirmed.