■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN T. THOMAS, Appellant. [940 NYS2d 163]—

Malone Jr., J.

Initially, defendant contends that Supreme Court should have required the People to provide race-neutral reasons for the challenges to two potential jurors from the first voir dire panel who were peremptorily challenged by the People. The record reflects that, after the People exercised a peremptory challenge to a female African-American potential juror on the second panel, defense counsel made a *Batson* challenge, explaining that "[t]here were two black females on the first panel to which the prosecution exercised peremptories." The court asked the People to respond to the challenge. The People offered into evidence the questionnaire of the potential juror on the second panel, and explained that she had been excluded because she had indicated on the questionnaire that certain members of her family had been either victims or perpetrators of crimes. In response, defense counsel argued that the juror had also indicated on the questionnaire that she would not have a problem being fair and impartial. He then continued, stating, "[N]either did

the other two ladies that were previously the subject of peremptories. They all indicated in their answers that they would be fair and impartial jurors . . . They didn't indicate any type of bias whatsoever. My argument is that the People have been excluding those on the panel that are of the same race as the [d]efendant." There was then some discussion regarding the identities of the two female potential jurors from the first panel and the court allowed both the People and defense counsel an opportunity to retrieve their papers so that the women could be identified, cautioning that it was "not saying that [it] will require a reason" for the exclusion of those two women.

After the two women were identified, Supreme Court asked if the People wanted to be heard. The People then stated simply that "neither witness [sic] was dismissed, either due to gender, nor toward [sic] race." The court then accepted the two women's questionnaires into evidence and stated, "Let's take one at a time. Make your arguments. There was no challenge for [the two women from the first panel], nor perhaps should there have been, but more importantly, the [d]efendant did not make a record at the time that the respective jurors [were challenged] . . . So now it's a question of reinventing the wheel; but the [d]efendant, having established that two African American females were peremptorily charged [sic], I do require of the [d]efendant - the People, to provide a race neutral answer, or reason, for the peremptory challenge with respect to [the woman from the second panel]. The People having done so, . . . the *Batson* challenge with respect to [the woman from the second panel] is denied. The [c]ourt need not rule further . . . with respect to [the woman from the second panel]. Do either/or both of you wish to be heard further as relates to anything else before we move on to the next potential juror?"[1] At that point, defense counsel affirmatively stated that he had nothing further to add.

On this record, while we agree with the dissent that the *Batson* challenge was timely made because it was made before the end of jury selection (*see People v Battle*, 299 AD2d 416 [2002]), we nonetheless find that defendant's claim with respect to the two women on the first panel is unpreserved. While defense counsel referred to the women on the first panel in alleging that the People were engaging in a pattern of exclusion, he did not expressly indicate that he was requesting race-neutral

---

1. We respectfully disagree with the dissent's interpretation of the record that Supreme Court did not require the People to provide race-neutral reasons because the court believed that "there had been no challenge to the two prior jurors because defendant did not make a record at the time they were excused."

reasons for their exclusion (*see People v James*, 99 NY2d 264, 271 [2002]). Moreover, the record demonstrates that, after the People's challenge to the woman from the second panel was discussed, defense counsel again mentioned the exclusion of the two women from the first panel in support of his contention of a pattern of discrimination. When asked by Supreme Court to respond, the People stated that neither woman had been excluded based upon her race. The court then inquired if defense counsel wanted to respond and, although this presented defense counsel with an opportunity to clarify his challenge, he did not do so. "By accepting the People's explanation without any additional objection at a time that it could have been addressed, defendant failed to preserve a challenge to [the two women from the first panel]" (*People v James*, 99 NY2d at 272 ["It is incumbent upon the moving party to be clear about any person still claimed to be improperly challenged"]; *see People v Knowles*, 79 AD3d 16, 21 [2010], *lv denied* 16 NY3d 896 [2011]). In any event, it is "the moving party's burden to make a record that would support a finding of pretext" and, by not responding to the People's explanation for excluding those two women, defendant did not satisfy his "ultimate burden of persuading the court" that the People's exclusions were improper (*People v Smocum*, 99 NY2d 418, 422 [2003]).[2]

Defendant next argues that Supreme Court should have suppressed the evidence of the packet of crack cocaine he sold to the informant because Dirk Budd, one of the detectives who orchestrated the sale, did not testify as to what he did with the packet of crack cocaine after receiving it from the confidential informant. "The established rule in showing the authenticity of a fungible item of evidence permits the item's admission into evidence without the testimony of each individual through whose hands the evidence passed where circumstances provide reasonable assurances of the identity and unchanged nature of the proposed evidence" (*People v Pearson*, 224 AD2d 779 [1996]; *see People v Julian*, 41 NY2d 340, 343 [1977]). Here, testimony at trial established that the evidence custodian from the Ulster County Sheriff's Office found the packet containing the crack cocaine in the evidence drop box. The accompanying paperwork indicated that it had been placed there by Budd and that it was to be transported to the State Police crime laboratory for test-

---

2. Even if we agreed with the dissent's view on this issue, and assuming that the Assistant District Attorney who exercised the relevant first two peremptory challenges is still so employed, it will certainly be problematic to expect him to clearly and accurately state at a hearing the race-neutral reasons for those challenges now, more than two years later, and so a new trial would likely be a better remedy.

ing. The packet was sealed in an evidence bag and processed according to established procedures under normal circumstances. At trial, the witnesses who handled the packet testified that they recognized the packet and that it was in the same or substantially the same condition. Considering the totality of the circumstances presented here, reasonable assurances as to the identity and unchanged nature of the packet exist, notwithstanding the fact that Budd did not specifically testify that it was he who placed the packet in the evidence drop box. Moreover, it is well settled that any gaps in the chain of custody affect only the weight of the evidence to be accorded by the jury, not its admissibility (*see People v Hawkins*, 11 NY3d 484, 494 [2008]; *People v Gilmore*, 72 AD3d 1191, 1192-1193 [2010]).

Mercure, A.P.J., and Kavanagh, J., concur.

Rose, J. (concurring in part and dissenting in part). We disagree with the majority's conclusion that defendant did not preserve his challenge to the exclusion of jurors from the first panel and, therefore, we respectfully dissent from that part of the majority's decision. The record reflects that, after the People exercised a peremptory challenge to an African-American member of the second panel, defendant's counsel made a *Batson* challenge (*see Batson v Kentucky*, 476 US 79 [1986]) with respect to that juror and "two black females on the first panel to which the prosecution exercised peremptories." After the People provided a race-neutral explanation as to the juror from the second panel, counsel for defendant stated that all three of the jurors at issue had indicated that they would be fair and impartial and that "the People have been excluding those on the panel that are of the same race as the [d]efendant." The prosecutor then stated that he needed to get his paperwork if he was going to be required to give a reason for dismissing the two jurors from the first panel. Supreme Court allowed him to get his papers, but also left open the question of whether he was going to require a reason for those jurors. The questionnaires for the two jurors from the first panel were then marked as court exhibits and, in response to the court's question of whether he wished to be heard, the prosecutor merely stated that neither of the jurors had been dismissed due to race. Supreme Court then held that there had been no challenge to the two jurors from the first panel because defendant did not make a record at the time they were excused, concluded that the People were only required to provide a race-neutral reason for dismissing the juror from the second round and accepted the explanation as to that juror as valid.

In our view, defendant sufficiently articulated his *Batson* chal-

lenge to all three jurors (*see People v James*, 99 NY2d 264, 270-271 [2002]). As the *Batson* challenge was timely made, Supreme Court erred in only requiring the People to provide a race-neutral reason for the challenge to the third juror (*see People v Perez*, 37 AD3d 152, 154 [2007]; *People v Battle*, 299 AD2d 416 [2002]; *People v Ramirez*, 295 AD2d 542, 542 [2002]). Accordingly, we would hold the appeal in abeyance to afford the People the opportunity to establish nonpretextual reasons for the initial challenges at an evidentiary hearing (*see People v Battle*, 299 AD2d at 416; *People v Ramirez*, 295 AD2d at 542; *People v Pagano*, 207 AD2d 685 [1994]). Garry, J., concurs. Ordered that the judgment is affirmed.