*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    October 22, 2015                    106000
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

MICHAEL GRAFTON, Also Known
    as MURDA,
                        Appellant.
_____

Calendar Date:    September 10, 2015

Before:    Lahtinen, J.P., Garry, Lynch and Devine, JJ.

_____

        Mitch Kessler, Cohoes, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Peter H.
Willis of counsel), for respondent.

_____

Lahtinen, J.P.

        Appeal from a judgment of the County Court of Schenectady
County (Giardino, J.), rendered May 17, 2013, upon a verdict
convicting defendant of the crimes of attempted assault in the
first degree and criminal possession of a weapon in the second
degree (two counts).

        Defendant and Rome Halliburton (also known as Calvin Jones)
allegedly exchanged multiple gun shots on a street in the City of
Schenectady, Schenectady County.  Defendant and Halliburton's
brother, Winston Halliburton, received nonfatal gunshot wounds
during the incident.  Defendant was charged in a multi-count
indictment and a jury trial ensued.  The jury was unable to reach
a verdict on one count and acquitted defendant on two other

counts, but he was found guilty of one count of attempted assault in the first degree and two counts of criminal possession of a weapon in the second degree. He was sentenced to concurrent prison terms of 15 years, together with postrelease supervision, and now appeals.

Defendant, who is black, contends that the People violated his equal protection rights under Batson v Kentucky (476 US 79 [1986]) by using peremptory challenges to remove the two nonwhite members of the jury panel, resulting in an all white jury.[1] A Batson challenge implicates a three-step process in which, "[a]t step one, 'the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges'" (People v Hecker, 15 NY3d 625, 634 [2010], cert denied ___ US ___, 131 S Ct 2117 [2011], quoting People v Smocum, 99 NY2d 418, 420 [2003]). "Once a prima facie showing of discrimination is made, the nonmovant must come forward with a race-neutral explanation for each challenged peremptory — step two" (People v Smocum, 99 NY2d at 422). The explanation at step two is "not required to be 'persuasive, or even plausible'; as long as the reasons for the challenges are 'facially neutral,' even 'ill-founded' reasons will suffice" (People v Lee, 80 AD3d 877, 879 [2011], lvs denied 16 NY3d 832, 833, 834 [2011], quoting People v Payne, 88 NY2d 172, 183 [1996]), and determining whether the step two explanation is adequate is "a question of law" (People v Allen, 86 NY2d 101, 109 [1995]). If the nonmoving party provides an adequate explanation, "the burden then shifts back, at step three, to the moving party to persuade the court that reasons are merely a pretext for intentional discrimination" (People v Hecker, 15 NY3d at 656 [internal quotation marks, brackets and citation omitted]). This step is a factual issue in which the trial court has broad discretion in determining credibility (see id.; People v James, 99 NY2d 264, 271 [2002]; People v Knowles, 79 AD3d 16,

_____

[1] Other nonwhite jurors were in the jury pool, but they were removed for cause. Of the two nonwhite jurors removed by the People's peremptory challenges, one juror (No. 19) was black, whereas the other (No. 127) was described as not Caucasion, not black and ostensibly was Asian American.

21 [2010], lv denied 16 NY3d 896 [2011]; see also Miller-El v Cockrell, 537 US 322, 339 [2003]).

Initially, we note that the Batson application, made before the end of jury selection, was timely (see People v Thomas, 92 AD3d 1084, 1085 [2012]) and any issue regarding the sufficiency of defendant's step one showing is now moot since the People offered step two race neutral reasons for the challenged peremptory challenges (see People v James, 99 NY2d at 270). The reasons offered by the People included, as to juror No. 19, that the father of her children had been prosecuted by the Schenectady County District Attorney's office for robbery and "presumably" was in prison. Regarding juror No. 127, the People explained in some detail that there were jurors after her that they preferred to use to fill the twelfth and final seat. Although these reasons were facially race-neutral satisfying the People's step two burden, defendant points out that the People's statement regarding juror No. 19 had significant factual errors embellishing on her actual comment,[2] and also that the People did not challenge a white juror whose sister had "been in and out of trouble for years, felonies, in trouble with the law." As such, there were important factual issues implicating credibility that needed to be resolved at step three. However, as conceded by the People in their brief on appeal, County Court ruled on the Batson application at the conclusion of step two.

The improper compressing of a Batson inquiry does not necessarily mandate reversal, as the movant must preserve the issue as to whether a meaningful step three inquiry occurred (see People v Smocum, 99 NY2d at 423; People v Coleman, 5 AD3d 1074, 1075 [2004], lv denied 3 NY3d 638 [2004]). Indeed, whatever procedural problems may exist in a Batson inquiry, the overriding concern is that a properly preserved question regarding the

_____

     [2] The juror did not state that the prosecution had occurred in Schenectady County. She also did not relate any disposition of the charge nor did she indicate that the man was the father of both of her children. She simply stated that three years earlier her "daughter's father was charged with robbery in the second degree," and added that he was treated "fair[ly]."

ultimate issue of discrimination is meaningfully addressed (see People v Smocum, 99 NY2d at 423). Here, defendant sufficiently preserved the issue and the ultimate issue was not adequately addressed. After the People offered their race neutral reasons as to the second relevant juror, defendant began to respond and urged that the record was not complete. County Court stated that the record was complete and summarily denied defendant's Batson challenge. "[T]he court did not appear to give any consideration to pretext, nor was the basis of its ruling reflected in the record" (People v Tucker, 256 AD2d 1019, 1020 [1998]).

In summary, relevant circumstances here include: the compressing of the Batson inquiry; the People's acknowledgment that the Batson ruling was made prematurely after step two; defendant's preservation of the issue as to the lack of a step three factual determination regarding pretext; and the existence of factual issues at step three as exemplified by, among other things, the incorrect characterization of juror No. 19's statement and the lack of explanation regarding accepting a white juror with similar circumstances as those found objectionable in a black juror. Additionally, the retirement of the trial judge is a factor that makes remittal to properly address the unanswered factual and credibility issues implicated in step three difficult (see People v Scott, 70 NY2d 420, 426 [1987]). Under all the circumstances, we are persuaded that reversal is required.

Although the remaining issues are academic, since there must be a new trial, we briefly note our concern about the People's extensive use of defendant's street name "Murda," as well as the introduction at trial of evidence inconsistent with the pretrial Ventimiglia/Molineux ruling.

Garry, Lynch and Devine, JJ., concur.

ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Schenectady County for a new trial.

ENTER:

Robert D. Mayberger
Clerk of the Court